# DECEMBER, 1935

UVALDE ROCK ASPHALT COMPANY V. M. H. HURLOCK ET AL.

No. 6489.   Decided December 4, 1935.
(87 S. W., 2d Series, 1085.)

*W. H. Graham,* of Houston, *Kampmann & Burney* and *W. P. Dobbins,* all of San Antonio, for appellant.

One who signs petition to pave a street and promises to

pay the amount of costs of paving assessed against him is personally liable on his obligation. Anderson v. Bandon, 121 Texas, 188, 47 S. W. (2d) 261; City of Galveston v. Herd, 54 Texas, 420; City of Waco v. Chamberlain, 92 Texas, 207, 47 S. W., 527; Claxton v. Brandon, 121 Texas, 184, 47 S. W. (2d) 263.

*Ralph Walton*, of Houston, for appellees.

The assessment certificate, not being in accordance with the city charter provisions, was void, and being void no valid lien could attach against the property, and although appellees signed petition and agreed to pay the assessment, they were not bound to pay void assessments. Scanlan v. Texas Bitulithic Co., 44 S. W. (2d) 967; Uvalde Rock Asphalt Co. v. Lyons, 289 S. W., 202; Elmendorf v. City of San Antonio (Com. App.), 242 S. W., 185.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

The Court of Civil Appeals for the First District has submitted a number of certified questions. The certificate discloses that the suit is by the Uvalde Rock Asphalt Company against M. H. Hurlock, J. O. McPherson, and Mrs. Mary Ella Schmidt. Mrs. Schmidt seems to have no material conection with the matters involved in the certified questions, and for that reason she need not be noticed futher. The suit is on a paving certificate and to foreclose an alleged paving lien on a certain city lot in the City of Houston. The paving proceeding in which the paving certificate was issued is set out in the certificate of the Court of Civil Appeals at great length and volumnious detail. For this reason the court's certificate will not be set out, but we shall make a statement of the material facts, including various pertinent provisions of the city charter.

Houston is a Home Rule City and among its charter provisions are the following:

Section 5 of Article 4A of the charter, so far as material, provides:

"Sec. 5. Whenever the owners of 51 per cent of the front feet of property abutting upon any highway, or portion thereof, proposed to be improved, shall, in writing, petition the City Council to make improvements thereon, and shall generally designate the nature of the proposed improvements and the limits within which the same are to be constructed, the kinds of pavement that may be constructed and the material or materials

to be used in such pavement; and said petition shall authorize the City Council to select from the pavements and materials named in said petition such of same as the City Council may conclude to adopt, and shall agree to pay the whole cost of constructing curbs, if any, and shall stipulate the portion of the cost of the other improvements in front of the property of such petitioning owners abutting the said highway named to be improved, exclusive of the portion thereof payable by the owners of railroads and street railways, or paved by them or it under the orders of the City Council, to be not less than two-thirds thereof to be paid by petitioners, who shall expressly agree to pay the same; the City Council shall receive said petition or petitions and cause the same to be filed, and said petition or petitions shall remain on file with said Council not less than five days before the date fixed by it for acting upon said petition, and the City Council shall publish in some newspaper of general circulation in the City of Houston a notice to the effect that a petition for the improvement of such highway or portion thereof has been filed with the said Council and will be acted on by the Council on the. day and at the time and place mentioned in the said notice, and thereat the City Council shall consider the said petition and shall hear any objections thereto which may be made by any owner of property abutting the proposed improvement, or any party interested therein, and shall examine into the regularity of the said petition and the genuiness of the signatures thereto, and if the said petition, or petitions, are found by the City Council to be in due form, and that the signatures thereto are genuine, and that the owners of at least 51 per cent of the front feet of property abutting upon the said improvement have signed the same, and if in the judgment of the City Council, under all the circumstances, including the portion of the cost agreed to be paid by petitioners, the making of such improvement is for the public good, and that the same ought to be made, and if there shall be a fund legally available out of which the city's portion of the cost of the proposed improvements can be appropriated, the City Council shall by resolution so declare, and shall order the making of such improvements, * * *"

Section 6 provides for the letting of the contract for the construction of the proposed improvements; and Section 7 provides, so far as relevant, as follows:

"Sec. 7. When said contract has been executed, the City Engineer shall at once prepare and file with the Council a written statement, which shall contain the names of the persons,

firms, corporations or estates owning property abutting on the highway, or portion thereof, to be improved, with the number of front feet owned by each, and a description of their property, either by lot or block number, or in any other manner sufficient to identify it. Said statement shall also contain the estimated total cost of the whole improvement, and the estimated cost per front foot of abutting property proposed to be assessed against owners thereof. Said statement shall be examined by the City Council, and any errors or mistakes therein corrected, but no error or mistake in said statement shall invalidate any proceeding had or assessment made under the terms of this Article. Upon approval of said statement by the Council it shall so declare by resolution. Said resolution shall order a hearing to be given before the City Council to said owners, their agents or attorneys, and set a time and place for the same; at which hearing an opportunity shall be given to said owners, or any party interested, to be heard concerning the special benefits, if any, to said property by means of said improvement, or concerning any error or invalidity in any proceeding with reference thereto, or concerning any matter or thing connected therewith, and said resolution shall direct the City Secretary, or such other officer of the city as may be designated by the Council, to give notice of said hearing by publishing a copy of said resolution in some daily paper of general circulation in the City of Houston, not less than three times before the date set forth for said hearing, the first publication to be not less than ten (10) days prior to the day of said hearing. The said notice shall also contain a general statement of the nature of the proposal improvements, and the limits within which same are to be constructed, and a statement of the amount per front foot of property abutting on said improvement which it is proposed to assess against owners thereof.

"* * *.

"At the time and place named in the said resolution and notice, said property owners, their agents and attorneys, shall receive a full and fair hearing before the City Council as to special benefits, if any, of said proposed improvements to their property, and as to any error or invalidity in any proceeding with reference to said improvements, or any objection to said assessment, or any matter in connection therewith, and shall be entitled to subpoena witnesses and produce testimony."

Section 9, so far as relevant, provides as follows:

"Sec. 9. When the hearing above mentioned has been concluded, the City Council shall by ordinance assess against the

several owners of the property abutting upon the highway, or portion thereof ordered to be improved, and against their property, such proportionate part of the cost of the improvement as may have been adjudged against them, respectively. The portion of said cost assessed against any such owner or his property, together with reasonable attorney's fees and costs of collection when insurred, shall constitute a personal liability of said owner and a first and prior lien upon said property, superior to all other liens, claims or titles, except for lawful ad valorem taxes. Such ordinance shall fix and declare said lien and liability and shall state the time and manner of payment of said assessments. * * *

"The portion of the cost of an improvement determined by the Council to be payable by the owners of property abutting thereon, shall be apportioned between them in accordance with the front foot plan or rule, in proportion as the frontage of each owner is to the whole frontage to be improved; * * *"

Section 12 provides:

"Sec. 12. The passage by the City Council of a resolution directing the improvement of any highway, or part thereof, shall operate as notice thereof and of the assessment and lien thereafter fixed upon property abutting said highway, as against all creditors or owners of such property and purchasers thereof, and the lien fixed by said assessments shall, without further proceeding or record, relate back to said resolution and be effective against said purchasers or creditors."

On November 23, 1925, M. H. Hurlock and others petitioned the City Council to pave the portion of Dumble Street, between Harrisburg Road and Telephone Road. The petition, so far as presently material, reads as follows:

"To the Honorable City Council of the City of Houston:

"In accordance with the terms of Article 4A of the charter of the City of Houston, * * * we, the undersigned owners of property abutting on Dumble Street in said City between its intersection with the South line of Harrisburg Road and its intersection with the North line of Telephone Road (the property of each owner being described by block number and number of front feet set opposite his name below); respectfully petition your Honorable Body:—"

(Here follow various provisions according to the provisions of Section 5 of Article 4A of the City Charter.)

The petition then provides further:

"That the cost of constructing said improvements shall be paid as follows, towit:

"(a) The cost of constructing said improvements between and under the rails and tracks and switches and twelve inches on the outside of the rails of any steam railroad or street railway occupying said street shall be paid by the respective owners thereof, and assessed against said owners and their property in manner provided by the City Charter.

"(b) That the City shall pay the whole cost of improveing the intersection of said street with other streets and alleys, except that part thereof occupied by a steam railroad or street railway, as covered by Section (a) hereof.

"(c) That the total remaining cost of said improvement (including the whole cost of curbs) excluding that portion of the said cost referred to in sub-sections (a) and (b), shall be paid by the owners of the property abutting on said street, and assessed against them and their property as provided by the City Charter.

"* * *

"And each of us, whose name is hereto subscribed, hereby severally agree to pay to the contractor to whom said work may be let the amount and proportions of the cost thereof which may be assessed against us respectively, in accordance with the terms hereof, and of said Charter."

Among the other signatures to the petition is that of M. H. Hurlock and in connection with his signature is designated a property frontage of 100.35 feet, which corresponds with the frontage of the lot here in question.

At the time the above petition was presented to the City Council and the improvements were ordered made, a deed appeared recorded in the deed records of the county, having been put of record December 9, 1919, by which the city lot here in question, which abuts on Dumble Street, was conveyed to M. H. Hurlock, Jack D. Thompson and T. V. Hurlock, the grantees named in the deed. Said grantees had conveyed the lot to the Hurlock Realty Company on May 20, 1920, but this deed was not put of record until March 18, 1927. The paving proceedings came to an end on January 3, 1927. On December 1, 1926, the Hurlock Realty Company, by a deed executed in the name of the Company by M. H. Hurlock and C. H. Hurlock, conveyed the lot to M. H. Hurlock. This deed was recorded March 18, 1927. On December 31, 1926, M. H. Hurlock conveyed the lot to J. O. McPherson, but the deed was not recorded until March 18, 1927. In this deed the vendor's lien was reserved to pay the purchase money note executed to Hurlock by McPherson and the instrument also contains the following provision: "All

taxes or assessments on the property herein described, beginning with the year 1927, are to be paid by the grantee herein." The paving petition, hereinabove mentioned, which was filed with the City Council on November 23, 1925, was duly granted by the City Council on December 7, 1925, and by proper resolution, the City Council ordered the improvements to be made. On December 23, 1925, the City Engineer filed with the City Council a written statement as provided in Section 7 of the city charter. In the instrument "M. H. Hurlock and Jack D. Thompson" were listed as owners of the lot in question. The notice prescribed in said section, for the hearing on benefits, was duly published as provided in said section of the charter. The notice was addressed "Official Notice to Property Owners on Dumble Street from the south line of Harrisburg Road to the North line of Telephone Road." In due time after the publication of this notice, namely, on February 15, 1926, the hearing on benefits, as provided in Section 7 of the city charter, was had. Neither M. H. Hurlock nor Jack D. Thompson appeared at the hearing. The City Council thereupon proceeded, as provided by the charter, to determine the amount to be assessed against the various property owners and their property, according to the front foot plan. On January 3, 1927, the City Council passed a resolution accepting the paving work which the Uvalde Rock Asphalt Company, as the contractor, had completed. And on the same day, the City Council, by ordinance, declared an assessment in the sum of $700 against "M. H. Hurlock and Jack D. Thompson," as the owners of said lot, and declared a lien on the lot to secure the payment of the amount of the assessment. The paving certificate sued on was issued to cover said assesment.

The questions certified are as follows:

"First. Under the facts of this case can a recovery on the certificate sued upon be had against M. H. Hurlock by reason of the fact that he joined in the petition to have the street paved, wherein and whereby he agreed that in the event the street was paved he would pay to the contractor who did the work the amount and portion of the cost of such work which might be assessed against him in accordance with the terms of such assesment and of the city charter?

"Second. Since in the proceedings to have the street paved M. H. Hurlock and Jack D. Thompson were named as owners of the property involved in this suit, though at the time neither of them, as a fact, owned the property, the title thereto at such time and all times from the beginning of the proceedings to

December 1, 1926, being in Hurlock Realty Company; and since it is shown that the assessment upon which the certificate sued on is based was made against M. H. Hurlock and Jack D. Thompson jointly, as joint owners of the property, was such certificate void and non-enforceable as a lien against the property?

"Third. Since M. H. Hurlock became the owner of the property by purchase on the 1st day of December, 1926, long after the resolution was passed by the governing body directing the street improvement, and since he held the superior title to the property and a vendor's lien thereon at the time the assessment was made, could a personal recovery be had against him upon the certificate sued on, and a judgment rendered against him establishing the paving lien in favor of the holder of the certificate?

"Fourth. Was not the plaintiff, under the facts shown, entitled to a personal judgment against J. O. McPherson upon his promise to pay all taxes or assessments on the property, beginning with the year 1927, and was it not entitled to a judgment against said J. O. McPherson establishing its paving lien?

"Fifth. If it be held that plaintiff is not entitled to recover a personal judgment against either of appellees for the amount due upon the certificate, is it not entitled to a judgment foreclosing the assessment lien upon the property against all the defendants?"

The questions will be answered in the order they appear.

First. Turning to the petition filed with the City Council on November 23, 1925, it is to be observed that, as comprehended by the provisions of section 5 of the city charter, the petition provides, in substance, that each of the petitioners would pay the cost of the improvements in front of his property scheduled in connection with his signature, including the cost of curbs. The specific promise to which this certified question refers has immediate relation to that agreement, and by its terms the beneficiary of the obligation and the mode of determining the amount of liability of the respective promisors are designated. As regards M. H. Hurlock, the circumstances of the case plainly show that the lot here in question is the property contemplated by his agreement, and that he assumed the role of owner of the entire lot and promised to pay to the contractor the amount chargeable against the lot, which amount was to be later determined by the City Council in ac-

cordance with the provisions of the city charter. The facts further show that the amount of his liability was determined by the City Council in accordance with the terms of the agreement—namely, the provisions of the city charter—and Hurlock was afforded an opportunity to be heard as the terms of the agreement required. When the paving work was completed and the amount of Hurlock's liability determined as it was, nothing further remained to be done but to issue to the contractor the paving certificate as contemplated by the agreement. It is unimportant that Jack D. Thompson is named, along with Hurlock, in the assessment that was declared. The important thing is that the assessment defines the amount found by the City Council to be chargeable against the lot, which amount Hurlock had promised to pay to the contractor. The first question is answered in the affirmative.

■ Second. The true character of the Hurlock Realty Company does not clearly appear. It seems to be a partnership composed of M. H. Hurlock and C. H. Hurlock. But whether this be its true character or not is immaterial, for the reason, as already shown, M. H. Hurlock, in the petition to the City Council, voluntarily assumed the role of owner of the entire lot, and in effect agreed to be treated as such in the paving proceeding. Having been accorded by the City Council, in the paving proceding, all the rights appertaining to the status of owner, Hurlock, and those holding title to the lot in privity with him, will not be heard to question the validity of the paving lien on the ground that Hurlock, at the time the paving proceeding was commenced, and at the time the hearing on benefits was had, was not the real owner of the entire lot. In regard to the validity of the assessment, the name of Jack D. Thompson, under the circumstances of the case, has no material bearing. The paving lien is valid. The second certified question is answered in the negative.

In view of what has been said, an answer to the third and fifth questions becomes unnecessary.

With respect to the fourth question, the assessment, as already shown, had effect to charge the lot with a valid paving lien. By virtue of the provisions of Section 12 of the city charter McPherson, in acquiring the lot from M. H. Hurlock, took same subject to the authority of the City Council to declare and fix said lien. For this reason, the promise of McPherson to pay all assessments beginning with the year 1927, created a personal liability against him which is available to

the contractor as a beneficiary of the promise.  Both branches of the fourth certified question are answered in the affirmative.  Opinion adopted by the Supreme Court December 4, 1935.